IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRENDEN ZENI, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TEACHERS INSURANCE AND ANNUITY )<br>ASSOCIATION OF AMERICA, NUVEEN, )<br>LLC, AND NUVEEN SERVICES, LLC, )<br>)<br>Defendants. )<br>) | Case No.: 3:23-cv-00381 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Teachers Insurance and Annuity Association of America ("TIAA"), Nuveen, LLC ("Nuveen"), and Nuveen Services, LLC ("Nuveen Services) (collectively "Defendants"), by and through their counsel, submit this Memorandum in Support of their Partial Motion to Dismiss Plaintiff Brenden Zeni's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth herein, Plaintiff's claim against Defendants for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII")[1], 42 U.S.C. § 2000e *et seq.*, should be dismissed with prejudice for failure to state a claim upon which relief can be granted.[2]

---

[1] Count II of Plaintiff's Complaint. (Doc. 1, ¶¶ 40-49).
[2] Defendants will submit an answer to the remaining claims in Plaintiff's Complaint following resolution of this motion. *See, e.g., Justice v. Dimon*, 2011 WL 2183146, at *2 (W.D.N.C. June 6, 2011)("[A]ny motion under Rule 12, whether it is to dismiss the entire Complaint or only portions of the Complaint, suspends the time for the moving defendant to respond to the remainder of the Complaint."); *Johnson v. Pope*, 2013 WL 6500752, at *3 (E.D.N.C. Dec. 11, 2013)( "Rule 12(a)(4) of the Federal Rules of Civil Procedure provides that upon the filing of a motion under Rule 12, the time to file a responsive pleading is extended to expire fourteen days after notice of the court's action on the Rule 12 motion. This rule applies even when, as here, a partial motion to dismiss has been filed.").

## I. INTRODUCTION

Plaintiff's lawsuit arises out of TIAA's implementation of a mandatory COVID-19 vaccination policy during the height of the COVID-19 pandemic (the "Vaccine Policy"). (Doc. 1, ¶¶ 19-28 ). Plaintiff claims that he was terminated *exclusively* as a result of his failure to comply with TIAA's Vaccine Policy. (*Id*. at ¶ 28)(emphasis added). Plaintiff alleges claims against Defendants for religious discrimination and retaliation under Title VII and for wrongful termination in violation of North Carolina public policy. Defendants now move to dismiss Plaintiff's Title VII retaliation claim pursuant to Rule 12(b)(6) because (1) Plaintiff failed to exhaust his administrative remedies with respect to this claim; and (2) Plaintiff cannot plausibly allege that his employment was terminated because he engaged in protected activity.

## II. STATEMENT OF RELEVANT FACTS AS ALLEGED IN THE COMPLAINT[3]

Plaintiff was hired by TIAA in or around December 11, 2011 as a Business Unit Finance Manager. (Doc. 1, ¶ 11). He was ultimately promoted to the role of Director. (*Id*. at ¶ 12).

On or about November 15, 2021, TIAA issued a Company-wide mandate requiring all employees to receive a COVID-19 vaccine as a condition of continued employment. (*Id*. at ¶ 19). On or about December 3, 2021, Plaintiff submitted a religious accommodation request stating that his sincerely held religious beliefs as a Christian conflict with the Vaccine Policy. (*Id*. at ¶21). TIAA denied Plaintiff's exemption request and informed Plaintiff he must comply with the Vaccine Policy as a condition of continued employment. (*Id*. at ¶ 22). Plaintiff appealed the denial of his request in or around February 2022. (*Id*. at ¶ 24). He alleges that TIAA's employee relations department informed him that there was no appeal process, but, upon information and belief, that

---

[3] Defendants do not admit any allegations set forth in Plaintiff's Complaint. These allegations are included for the sole purpose of this Motion to Dismiss. Nor do Defendants waive any objection to any allegations in Plaintiff's Complaint by summarizing the key allegations herein.

other similarly situated Christian employees received an opportunity to appeal the denial of a religious accommodation request. (*Id*. at ¶¶ 25-26). Plaintiff continued to refuse to comply with the Vaccine Policy. (*Id*. at ¶ 27). On or about March 18, 2022, TIAA terminated Plaintiff's employment exclusively for his failure to comply with the Vaccine Policy. (*Id*. at ¶ 28).

On or about March 23, 2022, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id*. at ¶ 29). Plaintiff's EEOC Charge solely alleged that TIAA discriminated against him due to his religion (Christian) in violation of Title VII.[4] The EEOC issued a Notice of Right to Sue Letter to Plaintiff on or about March 31, 2023. (*Id*. at ¶ 30).

On or about June 28, 2023, Plaintiff filed this Complaint bringing three claims against Defendants: (1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; and (3) wrongful termination in violation of North Carolina public policy. (*Id*. at ¶¶ 32-55). Defendants move to dismiss Plaintiff's claim for retaliation in violation of Title VII.

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mezu v.*

---

[4] A true and accurate copy of Plaintiff's EEOC Charge is attached hereto as **Exhibit A**. Given that Plaintiff referenced his EEOC Charge in his Complaint, and that the EEOC Charge is part of the public record, the Court may consider this document without converting the motion to dismiss into a motion for summary judgment. *See Brown v. Institute for Family Centered Services, Inc*., 394 F. Supp. 2d 724, 728 n.2 (M.D.N.C. 2005) (holding that the consideration of EEOC charges referenced in, but not attached to, the plaintiff's complaint is proper for Rule 12(b)(6) purposes and does not convert the motion into one for summary judgment; *See also Whittington v. N. Carolina Dep't of Juvenile & Delinquency Prevention*, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006) (citations and quotations omitted)(noting that a court may take judicial notice of public records and may consider authentic documents referenced or relied upon in the complaint at the 12(b)(6) stage). Similar to this case, the defendant in *Whittington* attached the plaintiff's EEOC charge as an exhibit to its motion to dismiss when the plaintiff referred to the charge but failed to attach it to the complaint. *Id*. The Court considered plaintiff's EEOC charge when ruling on the motion to dismiss because it was referenced in the complaint and is part of the public record. *Id*.

3

*Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). Thus, to avoid dismissal at the pleading stage, the complaint must contain well-pleaded factual allegations that plausibly give rise to an entitlement to relief. *Id.*

The Supreme Court's decisions in *Twombly* and *Iqbal* emphasize that even under a notice pleading standard, a complaint must contain sufficient evidentiary facts to raise a plausible – as opposed to just possible – inference that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678-80. In doing so, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Additionally, the Complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The Court is not bound by a plaintiff's legal conclusions as the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the Complaint. *Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 218 (4th Cir. 1994) (citation omitted); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).

### IV. LEGAL ARGUMENT

**A. Plaintiff's Title VII Retaliation Claim Fails as a Matter of Law and Should be Dismissed Pursuant to Rule 12(b)(6)**

Plaintiff 's Title VII retaliation claim must be dismissed for failure to state a claim upon which relief can be granted for the reasons set forth below.

**1. Plaintiff's Title VII Retaliation Claim Should be Dismissed for Failure to Exhaust Administrative Remedies**

It is well-settled that before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e-5(b), (f); *Walton*

*v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Harker*, 33 F.4th at 172 (internal citations omitted). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Id.* (internal citations omitted). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000). On the other hand, if the Title VII claims in the civil action "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Harker*, 33 F.4th at 172 (internal citations omitted).

Here, Plaintiff's Title VII retaliation claim fails as it exceeds the scope of his original EEOC Charge and is not reasonably related to his charge of religious discrimination. Plaintiff's EEOC charge is *solely* rooted in allegations of religious discrimination. Specifically, Plaintiff's Charge alleges that he was "terminated due to not getting the vaccine due to his sincerely held religious beliefs" and further states that "I believe I was discriminated against due to my religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended." (Ex. A). There is simply no mention of retaliation in any form in his EEOC Charge. *Id*. Indeed, Plaintiff's narrative in his Charge does not contain one fact that even hints at retaliation, nor did he list retaliation in the "discrimination based on" box in the Charge. *Id*. If Plaintiff thought he was terminated for engaging in protected activity, he should have included allegations of retaliation in his EEOC Charge. *See e.g. Gray v. Walmart Stores, Inc.*, 2011 WL 1831780, at *4 (E.D.N.C. May

5

12, 2011) ("If plaintiff thought that she had been subjected to age and national origin discrimination, she could have, and should have, said so in her charge.").

In cases where the claim raised in the district court litigation involves a different form of unlawful employment practice than the one described in the administrative charge, courts in the Fourth Circuit have found plaintiff failed to exhaust administrative remedies. *See e.g. Miles v. Dell, Inc.*, 429 F.3d 480, 490-92 (4th Cir. 2005) (concluding that plaintiff's retaliation claim was not reasonably related to her charge for sex and pregnancy discrimination claims where she did not check the "retaliation" box, nor mention retaliation in her narrative and therefore had not exhausted her administrative remedies.); *Hui Minn Lee v. Mkt. Am., Inc.*, 2020 WL 1274226, at *6 (M.D.N.C. Mar. 17, 2020) (granting defendant's motion to dismiss plaintiff's claim for retaliation under Title VII as the retaliation claim was outside the scope of Plaintiff's EEOC Charge alleging age and national origin discrimination.); *Cowgill v. First Data Tech., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022) (barring retaliation claim in the ADA context where the narrative explaining the plaintiff's charge made no mention of retaliation). Therefore, any retaliation claim in this civil action is not reasonably related to Plaintiff's EEOC Charge which *only* alleged religious discrimination. For those reasons, Plaintiff's Title VII retaliation claim should be dismissed with prejudice for failing to exhaust administrative remedies.

2. **Plaintiff's Title VII Retaliation Claim Fails on the Merits**

Even if Plaintiff exhausted his administrative remedies with respect to his Title VII Retaliation claim, which he did not, his claim should still be dismissed for failure to state a claim upon which relief can be granted.

Title VII prohibits retaliation by an employer against an employee "because [the employee] has opposed any practice made an unlawful employment practice by" Title VII "or because he has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation in contravention of Title VII, a plaintiff must prove (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the protected activity and the adverse employment action. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). With respect to the causation element, Plaintiff bears the burden of proving that "the desire to retaliate was the but-for cause of the challenged employment action." *University of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013). In this case, Plaintiff cannot state a claim for retaliation under Title VII for two reasons: (1) because he failed to allege that he engaged in protected activity under the statute; and (2) because he cannot demonstrate a causal link between any alleged protected activity and his termination.

Plaintiff appears to allege that his religious accommodation request constituted protected activity under Title VII. (Doc 1, ¶ 45). However, merely requesting a religious accommodation, as was permitted under the Vaccine Policy, did not constitute protected activity under Title VII because it "does not constitute making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing, nor does it amount to opposing an unlawful employment practice." 42 U.S.C.A. § 2000e-3(a)[5]; *Reichert v. Infusion Partners, L.L.C.*, 2023 WL 4685377, at *6 (E.D. La. July 21, 2023); *See Leigh v. Artis-Naples, Inc.*, 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022)(holding that the plaintiffs requests for religious accommodations and exemptions to the defendant's vaccine policy did not constitute statutorily protected opposition activity made unlawful under Title VII). Plaintiff also vaguely alleges he "participated in

---

[5] The first part of this statute is known as the "opposition clause," while the second is the "participation clause." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017).

7

opposition activity by voicing his own opinions to Defendants, by and through their employees, to bring attention to Defendants' discriminatory activities." (Doc. 1, ¶43). However, Plaintiff does not allege any facts whatsoever in support of this conclusory allegation, including how he "voic[ed] his own opinions" to Defendants other than by submitting the religious accommodation request, which was permitted under the Vaccine Policy. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff has failed to allege he engaged in protected activity under Title VII.

Even assuming that Plaintiff has engaged in protected activity, which Defendants deny, his retaliation claim still fails because he has not plausibly alleged that there was a causal connection between his protected activity and his termination. Defendants issued their company-wide Vaccine Policy on or about November 15, 2021 requiring all employees to receive a COVID-19 vaccine as a condition of continued employment. (Doc. 1, ¶ 19). Plaintiff requested his religious accommodation on or about December 3, 2021 and allegedly "voic[ed] his opinions" to Defendants at some point after the Vaccine Policy was enacted. (*Id.* at ¶¶ 19, 43). Because the Vaccine Policy was in place before any conduct Plaintiff alleges to be protected activity occurred and because the policy clearly stated that dismissal could be a consequence for non-compliance, it is implausible to suggest that Plaintiff's termination was a result of any of his protected activity rather than a result of his decision not to comply with the policy.

Indeed, courts regularly reject retaliation claims in these circumstances, because the consequences for non-compliance with the vaccine policy were established before any alleged protected activity occurred. *See, e.g., Adams v. New York State Unified Ct. Sys.*, 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023)(dismissing the plaintiff's Title VII retaliation claim on the grounds that the plaintiff failed to establish a causal connection between her exemption request

and her termination where the defendants enacted a vaccine mandate and specifically noted – before the plaintiff sought an exemption – that failure to comply with the mandate or to receive an exemption could result in termination); *Speaks v. Health Sys. Mgmt., Inc.*, 2022 WL 3448649, at *6 (W.D.N.C. Aug. 17, 2022)(dismissing ADA retaliation claim where the employer's mandatory vaccination policy – which was the grounds for the plaintiff's termination when he chose to remain unvaccinated – was enacted before the plaintiff spoke up in opposition to it.[6]); *Together Emps. v. Mass Gen. Brigham Inc*., 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) (finding plaintiffs likely could not show a causal connection between protected activity and adverse employment action where the defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy"); *O'Hailpin v. Hawaiian Airlines, Inc.*, 2022 WL 314155, at *11 (D. Haw. Feb. 2, 2022) ("Plaintiffs are unlikely to establish a *prima facie* case of retaliation ... because the adverse employment actions ... appear to be unconnected to their [religious accommodation] requests. Indeed, the vaccine policy was established, as well as the consequences for failing to comply[,] ... before Plaintiffs submitted their [religious accommodation] requests."); *Jorgenson v. Conduent Transp. Sols., Inc*., 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023), *aff'd*, 2023 WL 4105705 (4th Cir. June 21, 2023)(dismissing the plaintiff's retaliation claim on the grounds that there was no causal link between the plaintiff's protected activity and termination because the employer's vaccine policy came into effect before the plaintiff opposed it, and the consequences for non-compliance with the policy were established before any alleged protected activity occurred.).

---

[6] "[R]etaliation claims under Title VII, [and] a retaliation claim under the ADA [are] analyzed under the same framework." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 850 n.5 (9th Cir. 2004).

Significantly, Plaintiff admits in his Complaint that Defendants terminated him "*exclusively* for his failure to comply with the Vaccine Policy." (Doc. 1, ¶ 28)(emphasis added). Therefore, Plaintiff's own allegations establish that his alleged protected activity was not a but-for cause of his termination and defeat his retaliation claim. *See Troulliet v. Gray Media Grp., Inc.*, 2023 WL 2894707, at *7 (E.D. La. Apr. 11, 2023)(dismissing the plaintiff's Title VII retaliation claim when the plaintiff herself argued that she was terminated because she would not comply with the defendant's vaccine policy). Accordingly, because Plaintiff has not plausibly alleged that there was a causal connection between his alleged protected activity and his termination, his retaliation claim under Title VII fails and must be dismissed.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's Title VII retaliation claim should be dismissed with prejudice.

Respectfully submitted this the 23rd day of August, 2023.

/s/Carl M. Short III
Carl M. Short III, NC #46396
*Attorneys for Defendants*
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704-342-2588
Facsimile: 704-342-4379
Email: carl.short@ogletree.com

/s/ Andrew P. Burnside
Andrew P. Burnside
Louisiana Bar No. 14116
Texas Bar No. 24061200
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
701 Poydras Street, Suite 3500

New Orleans, LA  70139
Telephone:  504-648-3840
Fax:  504-648-3859
Email: drew.burnside@ogletreedeakins.com
*Motion for Pro Hac Vice to be Filed*

# CERTIFICATE OF SERVICE

I, Carl M. Short III, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following persons:

David G. Redding
Austin A. Backus
2907 Providence Road, Suite A303
Charlotte, NC 28211
Telephone: 704-900-2215
Email: dredding@tlg-law.com
　　　　abackus@tlg-law.com
*Attorneys for Plaintiff*

Dated this the 23rd day of August, 2023

　　　　　　　　　　　　　　　　/s/Carl M. Short III
　　　　　　　　　　　　　　　　Carl M. Short III, NC #46396
　　　　　　　　　　　　　　　　*Attorney for Defendant*
　　　　　　　　　　　　　　　　OGLETREE, DEAKINS, NASH,
　　　　　　　　　　　　　　　　 SMOAK & STEWART, P.C.
　　　　　　　　　　　　　　　　201 South College Street, Suite 2300
　　　　　　　　　　　　　　　　Charlotte, NC 28244
　　　　　　　　　　　　　　　　Telephone: 704-342-2588
　　　　　　　　　　　　　　　　Facsimile: 704-342-4379
　　　　　　　　　　　　　　　　Email: carl.short@ogletree.com